UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____
In re:                                              )
    **JOHN J. LAWLOR, and**                           )    Case No.: **04-11018**
    **BARBARA NOTTELL**                               )    Case No.: **04-11019**
        **Debtors**                                 )
                                                    )
**JOHN J. LAWLOR , BARBARA NOTTELL**                )
**and JAN M. SENSENICH, CHAPTER 13**                )
**TRUSTEE OF THE ESTATES OF**                       )
**JOHN J. LAWLOR and BARBARA NOTTELL,**)
      **Plaintiffs**                                )    Adv. Pro. No. 04-01060
        **v**                                        )
**CHITTENDEN TRUST CO.**                            )
**d/b/a MORTGAGE SERVICE CENTER,**                  )
      **Defendant**                                 )
_____)_____

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

      Jan M. Sensenich, Chapter 13 Trustee and trustee of the estates of the debtors, plaintiff, pro se, and the debtors, by and through their attorney, Michelle Kainen, Esq., hereby move, pursuant to F.R.C.P. 56, applicable to this action under Bankruptcy Rule 7056, for summary judgment in plaintiffs' favor, there being no genuine issue as to any material fact, and the plaintiffs being entitled to judgment as a matter of law.

      In support of this motion, plaintiffs submit the following Memorandum of Law.

**MEMORANDUM IN SUPPORT OF MOTON FOR SUMMARY JUDGMENT**

### I.  INTRODUCTION

This adversary proceeding was commenced by the plaintiffs by complaint filed on September 21, 2004.  The complaint seeks a determination of the validity of a lien pursuant to Bankruptcy Rule 7001(2).  Specifically, plaintiffs seeks to avoid defendant's mortgage on the debtors' homestead based on the undisputed fact that the mortgage of the defendant lacks the signature of a witness as required by Vermont law, specifically, 27 V.S.A. § 341.

On December 9, 2004 Attorney Douglas J. Wolinsky  filed an Answer and Affirmative Defenses.

On August 4, 2005 the parties filed an Amended Joint Pre-trial Statement and Stipulated Statement of Uncontested Facts.  The Court approved the Pre-trial Statement by order dated August 11, 2005, providing that the plaintiff shall filed a Motion for Summary Judgment by October 15, 2005.

The parties agreed that there are no material facts in dispute and that resolution of the proceeding by summary judgment would appear appropriate.

The sole defense to this action raised by the defendant is based on the argument that a portion of the proceeds of the subject, unwitnessed mortgage was used to payoff the previous mortgage on the property and that therefore, the subject mortgage is subrogated to the Conseco Finance Servicing Corp. and is therefore

takes priority over the trustee's avoiding powers.

Plaintiffs submit that the uncontested facts in this case establish as a matter of law plaintiffs' entitlement to judgment as prayed for in his complaint.

## II.  ARGUMENT

The core of Plaintiffs's action to avoid defendant's mortgage is use of the trustee's powers under 11 U.S.C. § 544(a) and the hypothetical lien creditor status afforded by that section.  This Court has consistently ruled that Section 544(a) can be used to avoid defective mortgages in Chapter 13 in such situations.  ***In re Walter C. Orf and Emily G. Orf v. First NH Bank of Lebanon,*** Case No. 90-00581, Adv. Pro. No. 90-0066, filed May 21, 1991 (unreported decision); ***Dion, et. al., v P.B. Investments Corp***., A.P. No. 02-1034, 2002 WL 32059029 (Bankr. D. Vt. 2002) (Mortgage with missing witness avoided as defective under § 544); ***Sensenich v. Peoples Trust Company (In re: Rebello);*** A.P. 02-01015, filed August 9, 2002 (Bankr. D. Vt. 2002) (lack of acknowledgment rendered mortgage subject to avoidance under § 544); ***Jakab V. Cendent Mortgage Corporation,*** A.P. No. 1036, 2003 WL 21061238 (Bankr. D. Vt. 2003) (Where spouse never signed mortgage on entireties held property, mortgage held avoidable by debtor and trustee).  This approach has been upheld by both the Second Circuit Court of Appeals and the Vermont Supreme Court.  ***Mortgage Lenders Network, USA v. Sensenich (In re Potter),*** 313 F. 3d 11 (2d Cir. 2002); ***Mortgage Lenders Network, USA v. Sensenich,*** Entry Order, 2004 VT 107A, Supreme Court Docket No. 02-564 (2003).  Although the ultimate outcome in

***Mortgage Lenders***, was that the mortgage was not avoided, that outcome was specifically based on a holding that there was constructive notice to the trustee based on the recording of the foreclosure complaint in the land records prior to the debtor's bankruptcy.  Other than this specific defense of Mortgage Lenders Network based on the filing of its foreclosure complaint, this Court, the District Court for the District of Vermont, the Second Circuit Court of Appeals and the Vermont Supreme Court have all recognized the right of the Chapter 13 trustee to avoid mortgages that are defective under Vermont Law.

The only defense raised by the defendant in this case not specifically dealt with by the above cited opinions is what the defendant claims to be an affirmative defense of mortgage by subrogation.  According to the defendant, because *a portion* of the proceeds of its mortgage loan to the debtor was used to payoff the preceding mortgage, its defective mortgage is therefore subrogated to the previous mortgage holder, Conseco Finance Servicing Corp. and accordingly it's mortgage takes priority over the plaintiff's avoiding power.  See: **Answer and Affirmative Defenses,** P. 2, Paragraph 4, filed by the Defendant and dated December 9, 2004.

Because this defense is pled as an affirmative defense, the defendant has the burden of showing that its defense is supported both by the facts of this case and the law.  More specifically, to defeat the well established avoiding powers of the trustee, the defendant must show, as Mortgage Lenders did in **Potter,** *above,* that there was constructive notice of its mortgage to the trustee and to subsequent lienholders of the property.  It is not enough to show that but for the avoiding powers of the trustee, the defendant would, under the doctrine of subrogation, *as between the parties involved*,

4

have the rights of a subrogee.  There must also *constructive notice to subsequent purchasers or lienholders of that status.*

> Black's Law Dictionary defines subrogation as:
>
> The substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights or the other in relation to the debt or claim, and its rights, remedies, or securities.

*Black's Law Dictionary*, 5th ed. 1979, at 1279.

The Vermont Supreme Court ruled on the applicability of mortgage by subrogation in the case of **Iby v. Wrisley**, 104 Vt. 148, 158 A. 67 (1931).  In **Iby,** a purchaser of livestock, subject to a security interest or (as it more commonly was known) a chattle mortgage, subsequently sold the collateral to a third person.  This subsequent sale by the purchaser deprived the original seller of her security under the chattle mortgage.  The original seller (a Mrs. Wrisley) sought an action in trover against the original purchaser (Ibey).  The original purchaser then sought, to be subrogated to the rights of the original seller (Wrisley).  The theory under which Ibey sought subrogation was that since Ibey was liable to Wrisley on the debt not collected from the final purchaser of the property, Ibey was in the position of surety and should be subrogated to the rights of Wrisley.  However, the Vermont Supreme Court found that subrogation did not apply here.  The Court held:

> The claim that the plaintiff's will be entitled to subrogation to part of the mortgage security upon payment of whatever judgment may be obtained against them by Mrs. Wrisley is unsound.  It is true that they are

5

> sureties for the debt. *Perry v. Ward*, 82 Vt. 1, 4, 71 Atl. 721.
>
> \* \* \*
>
> The doctrine of subrogation is one of the benevolences of the law, and the tendancy is to extend rather than to restrict its applicaton. *Hall v. Windsor Savings Bank*, 97 Vt. 125, 133, 121 Atl. 582. There are, however, limits to its pertinency. "Unless the surety pays the debt in full, he is not entitled to subrogation; and until this is done, the creditor will be left in full possession and control of the debt and the remedies for its enforcement." *Musgrove v. Dickson*, 172 Pa. St. 629, 33 Atl. 705, 706, 51 A. S. R. 765. A *pro tanto* subrogation will not be allowed, since it would have the effect of giving distinct and conflicting interests in the same debt to both creditor and surety. Gannett v. Blodgett, 39 N.H. 150, 154.

**Iby v. Wrisley, et. al.**, 104 Vt. 148, 158 A. 67 (1931).

For the defendant in this case to prevail in its affirmative defense, it must clear several hurdles. The first hurdle is whether the defendant can be subrogated to the rights of the previous mortgage holder. If not, then there is no affirmative defense. The second hurdle is whether, *even if it can be* subrogated to the rights of the previous mortgage holder, is there constructive notice of its rights as subrogee such as to defeat the avoiding powers of the trustee? If the answer to that question is in the negative, it cannot defeat the avoiding powers of the trustee. Unless defendant can prove both the facts and the law sufficient to have both questions answered in the affirmative, there is no defense to this adversary proceeding and the Plaintiff is entitled to judgment as a matter of law.

Given the lack of specificity in the defendant's pleading this defense, the plaintiff finds himself in the position of attempting to prove the negative, however, as moving party he will make his best attempt and reserve the right to file a responsive memorandum to the Defendant's Memorandum.

Applying the purpose behind the doctrine of subrogation and the above case law to the facts of this case raise serious questions as to whether or not subrogation would even apply here.  First, as admitted in the defentant's Answer, *only a portion* of the funds advanced by the defendant were used to obtain the discharge of the Conseco Mortgage.  Assuming that subrogation would be available to the extent of the funds paid to Conseco, what would happen to the balance of the loan to which subrogaton would not apply?  Moreover, how can the defendant be subrogated to the rights of Conseco when the amount of its mortgage is greater than the Conseco mortgage?  The quoted language in the **Iby** case would certainly appear to suggest that subrogation would not be available in this context, since there can be no *pro tanto,* or partial subrogation.

Even more important than whether or not the defendant can be subrogated to Conseco is the question of what constructive notice there would be to subsequent purchasers for value or lienholders of such subrogation.  The trustee is charged only with constructive notice of what is properly perfected in the land records.  The Conseco mortgage may be perfected, but the land records also show it as being discharged. How can the defendant's claimed subrogation to a rights of the holder of a discharged mortgage, in an amount that even when it was paid off was less than the defendant's mortgage, constitute constructive notice of its defective mortgage to subsequent purchasers, lienholders or the trustee?   Certainly if, under Vermont Law, the missing signature of witness is sufficient to render the recorded mortgage itself less than constructive notice to subsequent purchasers and the trustee, the equitable doctrine of subrogation, which by its nature substitutes the rights of one entity for another with

7

respect to **specific** claims, cannot create constructive notice to innocent third parties who are strangers to the specific claims that gave rise to the claim of subrogation. Plaintiff respectfully urges that it cannot.

A very close analogy to the application of mortgage by surbrogation here, is the sister equitable doctrine of *deed by estopple*. It is well established under Vermont Law that where a deed is defective, as the deed in this case, the party tendering the deed cannot take advantage of the defect visa vis the mortgagee. In **Merchant's Bank v. Bouchard,** 568 A.2d 412 (1989) the Court held that normally a grantor cannot rely on a defect in execution of a mortgage to defeat the transfer, due to estoppel, but nevertheless, the principle of **Day v. Adams** is still good law with respect to constructive notice between the grantee and a subsequent bona fide purchaser. **Bouchard,** at 415. The person signing and tendering the deed is impliedly if not expressly representing the validity of the deed and the intent to transfer title and therefore is **estopped** from later attacking the validity of the deed, *even it* under the law the deed is defective to constitute constructive notice to third parties. However, even though deed by estopple would defeat an attack on the deed by the debtor alone, the status of the trustee, as hypothetical judgment lienor and purchaser without notice, is **not** bound by the estopple and is free from the deed by estopple defense. **In re: Orf,** *supra* at 6 (copy of Opinion attached). In the **Orf** case the Court addressed the deed by estopple defense, however in granting summary judgment to the plaintiff in that case the Court found that even the debtors, as debtors in possession, were not subject to that equitable defense. It should be all the more apparent that the trustee in this case, who was not a party to the previous transactions between the parties, should not be

8

bound by any equitable defenses that fail to establish **record notice, ie constructive notice** to subsequent good faith purchasers for value or subsequent attaching lienholders. The First Circuit Court of Appeals in **In re Ryan**, 851 F.2d 502 (1st Cir. 1988) was the first court to apply Vermont Law to a case where a bankruptcy trustee was seeking to avoid a defective mortgage on Vermont real estate. In doing so, the **Ryan** Court held that nothing flowing from the original defective deed **even if recorded in the land records**, was sufficient to put the trustee on constructive notice. See **In re Ryan** at 511, 512.

> In the present case, the original mortgage deed (from debtor Ryan to Quechee Lakes Corporation) was not a valid recording and **any documents stemming from this invalid record are not within the chain of title from the debtor to the trustee**. Therefore, even though the mortgage assignment from Quechee Lakes Corporation to CAC was properly recorded, the trustee is not charged with constructive notice of that assignment. And if the trustee had no notice of the assignment, then the assignment could not put him on inquiry of the prior, improperly witnessed deed. *See also In re Ryan,* 70 B.R. at 512 (bankruptcy court's rejection of the same argument for the same reason)
>
> In sum, under the law of Vermont, a purchaser in the shoes of trustee Stern would acquire his interest without either constructive or inquiry notice of CAC's interest, and thus would be entitled to priority. (emphasis added)

**In re Ryan** at 512. Certainly, if the duly recorded assignment of the mortgage in the **Ryan** case was insufficient to constitute constructive notice to the trustee, an **unrecorded** equitable right, which *might* have been enforceable between the original parties (mortgagee one, mortgagee two and the debtor) cannot possibly constitute constructive notice to the trustee.

A close analysis of the history of the **Merchant's Bank v. Sensenich (In re Potter)** decisions, cited above, provides guidance as to where both the Vermont

9

Supreme Court and the Second Circuit Court of Appeals draw the line with respect to constructive notice with respect to the strong arm powers of the a bankruptcy trustee. The issue in that case was whether the recording in the land records of a foreclosure complaint, where a judgement of foreclosure had already been entered, constituted constructive notice to the trustee. In holding that such a recording did constitute constructive notice, the Vermont Supreme Court relied on the fact that the mortgage had already been foreclosed and the filing of the complaint in the land records, based upon 12 V.S.A. §4523(b), provided constructive notice to the trustee. Both courts in *Potter,* and all of this Court's decisions on the subject have consistently held that constructive notice for purposes of the trustee's strongarm powers requires *record* notice in the land records to establish constructive notice. For this reason, the affirmative defense in this case is asking this Court to find constructive notice outside of the properly executed and duly recorded land records regarding the subject property, and therefore venture outside of every precedent on this issue from two Circuit Courts of Appeals, the Vermont District Court and all of this Court's decisions on this issue. For that reason, it must fail. For the Court to do otherwise would be at odds with all of its previous decisions on the subject as well as the decisions of the Vermont Supreme Court and both the First and Second Circuit Courts of Appeals.

### III.  CONCLUSION

For all of the above reasons, plaintiffs respectfully request that this Court grant summary judgment in favor of plaintiffs, avoiding the subject mortgage to defendant, and granting such other and further relief as the Court deems just and proper.

Dated: October 5, 2005.

Respectfully Submitted,

/s/ Jan M. Sensenich
_____
Jan M. Sensenich
Chapter 13 Trustee, Plaintiff, pro se
2456 Christian Street, Suite 3
White River Junction, VT  05001



/s/ Michelle, Kainen, Esq.

_____
Michelle Kainen, Esq.
Attorney for Debtor-Plaintiffs
P.O. Box 919
White River Junction, VT 05001


### CERTIFICATE OF SERVICE

I, Jan M. Sensenich, hereby certify that on October 5, 2005, I did serve true copies of the forgoing upon the following by first class mail, addressed as follows:


Douglas J. Wolinsky, Esq.
P.O. Box 1489
Burlington, VT  05402-1489


Office of the United States Trustee
74 Chapel Street, Suite 200
Albany, NY 12207



/s/ Jan M. Sensenich
_____
Jan M. Sensenich

11